No. 22,399.

S. L. HURLBUT, *Appellant*, V. DAN R. IRWIN and LOTTIE IRWIN,
*Appellees*.

#### SYLLABUS BY THE COURT.

LANDLORD AND TENANT—*Action for Rent—Plea of Payment—Plea Not
Sustained by Proof*. In an action for a balance of rent due on a farm
in the lead and zinc district of Cherokee county, the tenant's defense
was that the landlord agreed that the tenant should have the use of
the farm rent free for one year upon condition that he should procure
some person or corporation which would develop a mine on the prop-
erty. The tenant pleaded that he did procure one Jones "to begin the
prospecting, development and mining on said premises." The evidence
did not sustain that defense. On appeal that defense is abandoned,
and reliance is placed upon the success of the tenant's efforts in secur-
ing another person, Davis, who leased the land for a year and did some
drilling and prospecting thereon. *Held*, that since the defense pleaded
was not established below, and is abandoned on appeal, and the de-
fense now relied on fails to show that Davis developed the property
into a mining venture as specified in the landlord's promise to the
tenant, the tenant wholly failed in his defense, and the landlord is
entitled to judgment.

Appeal from Cherokee district court; FRANK W. BOSS, judge.
Opinion filed April 10, 1920. Reversed.

*R. E. Rosenstein*, of Baxter Springs, *Charles Stephens*, and
*Paul McCaskill*, both of Columbus, for the appellant.

*C. A. McNeill*, of Columbus, and *T. C. Tadlock*, of Joplin,
Mo., for the appellees.

The opinion of the court was delivered by

DAWSON, J.: This was an action for the rent of a farm; the
defense was a plea of payment by the performance of services.

The plaintiff owned a farm in the lead and zinc district in
Cherokee county. The defendant was his tenant for a number
of years, from 1909 to 1917, inclusive. Plaintiff's action was
for the rent for the year 1917 and for a balance due as rent for
the years 1915 and 1916. The defendant's answer alleged that
sometime during his tenancy of the farm, the plaintiff made an

agreement with defendant that the latter should have the use of the farm rent free for one year if defendant—

"Would go to work, take an interest in and secure persons who would prospect and begin the developments of said land, or a portion thereof for the purpose of mining lead and zinc or other minerals therefrom. . . .

"Defendants allege and aver further that in pursuance to said contract, the said Dan R. Irwin undertook to and did procure one J. M. Jones to become interested and to interest others in the prospecting, developing and mining said premises; that late in the year of 1915, the exact time defendants do not know and cannot state, the said J. M. Jones and others, by the efforts of said Dan R. Irwin, secured and procured persons to begin the prospecting, development and mining on said premises, and the same was done at the instance and procurement of said Dan R. Irwin and under and by virtue of the agreement and contract made by said defendant, Dan R. Irwin, and the said plaintiff herein; that the said Dan R. Irwin complied with all the conditions, and requirements of the said contract and agreement on his part, between the plaintiff and himself."

Issues were joined, and the cause was tried before a jury.

There is no dispute about the making of the agreement. Plaintiff resided in Texas, and many of his letters were put in evidence by the defendant. It was shown that the farm was in the proven lead and zinc district, and that many years ago drilling had been done on the farm with good results as to mineral indications, but no development had been done owing to the presence of water which would make mining expensive. One of plaintiff's letters, dated October 11, 1913, to defendant reads:

"But I appreciate more the mining news, and you state that you have a reliable company who would like to get a lease on my ground. I am willing to make lease but I know that it will be a heavy water proposition for a while, therefore it will take a company who have plenty of money, as the ground must first be drained before it can be mined.

"I would be willing to make you this proposition, that if as a result of your effort, you can interest some one in my ground and I should conclude to make a lease with said party after I had learned that they were reliable and had plenty of money, I would give you free rent on the entire farm for the coming season, this for your services, but I do not want to lease it to a speculator to hold. They must lease and commence work to show that they are deserving, and would go at it in a businesslike way."

Another letter to defendant, dated Jan. 27, 1914, reads:

"You have our letter dated Oct. 11th in which we enclose said letter

Hurlbut v. Irwin.

above requested, and on the same date we explained to you that if as a result of your effort in getting us a [re]liable company that would develop our land and would not hold said land for speculation that we would grant you free rental for farming purposes for one year, our entire tract that you now have possession of. In making the above proposition I wish to indicate that I am in touch with your client Davis and should a deal be made, and development result from said lease to repeat that you will be entitled for such an effort to free rental for a period of 12 months, following such development work. But a client that you will aid us in bringing about such development work. With the above explanation you can say to Mr. Davis that his making a lease will be satisfactory to you and that you will allow him sufficient space in coming on to the ground to operate same. So that he will have no handicaps you may also advise him that I would recommend leasing him the entire quarter section south of the road."

### In a letter to defendant, dated Feb. 20, 1914, plaintiff wrote:

"I received your letter of the 18th inst. . . . You also make inquiry as to what I mean by 'development work.' . . . The explanation that you made inquiry about as to what I mean by development? I would be leasing to the party on your recommend, of their being financially able to open up my ground, pump the water, etc., and of course it would take them some time to convince me that they intend to do something whereby I will receive the benefit. Which after receiving said benefit I will then arrange to skip one year of your making lease so as to give you the benefit of your effort should the party, S. H. Davis, perform a service that would convince me that he is not tying my land up, to hold for speculation, from which I would get no benefit. The reason I made that provision was that I had an old lease form here signed by two or three parties, and after they received said lease I don't think they were ever on the premises. So I made the above provision, not that a man could be induced to sign up a lease, and cause me to lose twelve months' use of the land, but I wish said party to perform a service that would justify me in granting the free use of the farm after this lease that you have made has expired, and we will have, during the interval, ample time to judge whether they are in earnest or not."

### On Oct. 17, 1914, plaintiff wrote to defendant:

"I do not wish to do anything that would prevent Mr. Davis from developing my ground if he so desires. I would also make a new lease under the conditions that ground would be mined, not drilled, as that has already been done to my satisfaction, and by as good drill men as ever drilled in any district, who pronounced same a very uniform ground, and as rich cuttings indicated as he had drilled in 20 years of experience."

### On Feb. 3, 1915, the plaintiff wrote:

"I wish to explain matters fully to you that I gave a lease on my grounds to . . . Stevens, . . . when the same had already been

drilled by O'Neal, of Webb City, he of course had no money to develop with, but thought that by holding my lease a year he might sell same to some one who did have, yet he did some drilling, had the same done by Geo. Sigars, of Waco, Mo., who likewise after Stevens' year expired begged and pleaded for a development lease on the grounds that he had plenty of backing that would open up the ground right away, and he held the same one year, and done nothing. Then came Davis and he had drilling done like Stevens, and to be plain about it his driller lied to him as to the formation and has ever since been pleading, writing and entreating for to get the same lease that he would naturally tell Davis was no good. He would also, to his new mining company that he said would back him, offer to guarantee two of the holes to make good mines. Therefore I don't like to lease to drillers, and especially to a driller who would tell Davis one thing and then write me another, and I have had a double experience along that line. Therefore the above is not a theory but a fact.

"So in this connection I would advise that one year's free rent does not go with the getting the ground leased but free rent goes with the company that is not only able to drain the ground and properly mine and mill same, and who does do both of the above things, which would incur them spending considerable money."

Many more letters passed between the parties, all of which clearly indicated that the plaintiff's purpose in offering defendant a year's use of the farm rent free was upon condition that the defendant should get his mineral developed and mined, not merely to get drilling done to determine the presence of minerals. That had been ascertained some years before. These letters were introduced by defendant. There was considerable oral testimony, which chiefly related to the extent of the defendant's efforts to secure some person or corporation which would develop a mine on plaintiff's property. It was also disclosed in the examination of witnesses that Davis, the person mentioned in the correspondence quoted above, had hired one Jones to drill on the farm, and that Jones had gone down to a considerable depth below the level he reported to Davis, and that he had discovered much richer ore at that lower level, but had concealed that fact from Davis. The evidence also tended to show that the defendant was in collusion with Jones in that matter, and that he acquiesced or participated in concealing the facts from Davis, for the purpose of getting Davis to abandon the development project, and that Jones and defendant agreed that the latter should have a share in the mining venture if Jones should himself secure a lease of the property.

Hurlbut v. Irwin.

Plaintiff during the trial asked leave to amend his pleadings to set out those facts. This was denied.

The jury returned a general verdict for defendant and answered certain questions:

By the defendants:

"No. 1. Q. Did the plaintiff and defendant enter into a contract and agreement whereby the plaintiff, S. L. Hurlbut, was to let the defendant have the use of the real estate in question in consideration of the defendant rendering services in an effort to secure persons to drill, prospect and endeavor to develop mineral mines thereon? Answer: Yes.

"No. 2. Q. If you answer number one in the affirmative, or 'yes', state whether or not said defendant, Dan R. Irwin, rendered substantial services for the plaintiff and substantially complied with his contract? Answer: Yes."

Counsel for plaintiff: "We object to this special question No. 1, submitted to the jury by defendants, for the reason that it is an effort on the part of the defendants to broaden the issues and is incompetent, irrelevant and immaterial.

"Objection overruled."

By plaintiff: "1. Was defendant, Dan Irwin, engaged by plaintiff, S. L. Hurlbut, to act as agent for said Hurlbut in securing suitable persons to drain and mine the land? Answer: Yes.

.   .   .   .   .   .   .   .   .   .   .   .   .

"4. Did said Irwin cause said Davis to secure a lease from Hurlbut and drill on said land? Answer: Yes.

"5. State whether J. M. Jones was induced by said Irwin to seek a lease on said land, or was it Jones' own work and discovery of ore that caused him to seek said lease? Answer: It was Irwin."

Plaintiff assigns a number of errors, some of which will be briefly considered. It will be noted that the plaintiff was to give the tenant a year's use of the land rent free if the tenant should procure some one who would develop mining on the property. It was immaterial how many "hundred trips" here and there the tenant may have made on his hunt for such a party. It was results, not efforts, that the plaintiff required in return for a year's free use of the farm. The defendant himself testified:

"I believe it was in 1913, if I remember right, along in the spring, or along the fore part of the summer like. I couldn't say exactly what date. Mr. Hurlbut was up at the farm and spoke about the Lawton mines doing so well. He said he thought he had mineral under his ground, and he would like to have it developed. He would like to have the benefit of it, and he would give me a year's rent free if I would get a company to develop that ground. A year's free rent on the entire farm, he said.

"Q. If you would do what? A. If I would get a company to develop this ground so he would receive royalty; a dividend."

A careful reading of the record indicates that the cause was not tried precisely on that theory.

It will also be noted that defendant pleaded that he did succeed in procuring "one J. M. Jones to become interested and to interest others in the prospecting, developing and mining said premises," and that "said J. M. Jones and others, by the efforts of said Dan R. Irwin [defendant], secured and procured persons to begin the prospecting, development and mining on said premises."

The plaintiff devotes considerable space in his brief to show that the evidence fails to establish the defense thus pleaded. In their brief, counsel for the defendant content themselves with this reply thereto:

"Davis and not Jones is the one Irwin got to take the land. . . . As above stated Irwin got Davis interested in the land, hence the Jones transaction cut no figure and had no effect in this case."

This reply perplexes us. Defendant pleaded that he got Jones and others to develop and mine the property. Now we are told that the Jones transaction cuts no figure in the case because Davis is the man whom Irwin interested. It is difficult to say that there is no evidence to establish the latter fact, although on the motion for a new trial Davis swore positively that such was not the case. But the controverted point is immaterial since the record fails to show that Davis did develop the property. Davis did drill and prospect for minerals in the year 1914, but he did not develop the property nor open a mine on it. And only by success in securing development and mining could defendant earn the promised use of the farm rent free for one year. The plaintiff's objection to defendant's first special question was meritorious. Defendant did not plead that he was to be compensated for "an effort" to secure development, but for accomplishment, for success in securing development. A more precise statement of the bargain was that propounded in plaintiff's first special question. There are other errors assigned, but they need not be considered.

Since the defense pleaded was not proved, and is abandoned on appeal, and since Davis, who is now relied upon as having been induced by defendant to develop and mine the property,

never did develop the property as a mining venture, it seems that the plaintiff is entitled to recover from defendant the rent due on his farm; and since all the material facts have been adduced, and no basis for a new trial can be discerned, final judgment must be ordered.

The judgment of the district court is reversed with directions to render judgment for plaintiff.